# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1328
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Missouri. |
| Tonya Johnson Hyles | * |
| | * |
| Appellant. | * |

_____

Submitted: November 14, 2007
Filed: April 8, 2008
_____

Before WOLLMAN, JOHN R. GIBSON, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

A jury convicted Tonya Johnson Hyles ("Hyles") of conspiracy to use interstate facilities to commit murder for hire in violation of 18 U.S.C. § 1958(a), aiding and abetting murder for hire in violation of 18 U.S.C. §§ 2 and 1958, possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(I), and conspiracy to deliver a firearm to a felon in violation of 18 U.S.C. §§ 922(g)(1) and 371.  She was sentenced to life imprisonment plus five years, and three years of supervised release.  She argues that  her convictions must be vacated because of: 1) a  non-prosecution agreement; 2) insufficient evidence; 3) a variance between the indictment and the evidence at trial; 4) Government misconduct in closing argument;

5) insufficient verdict to impose a life sentence; and 6) two erroneously admitted hearsay statements.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

The facts of this case are set forth in *United States v. Cannon*, 475 F.3d 1013 (8th Cir.), *cert. denied*, 128 S. Ct. 365 (2007), and *United States v. Tyrese Hyles*, 479 F.3d 958 (8th Cir. 2007).  Facts are reiterated here as relevant to Hyles's appeal, presenting them in a light most favorable to the verdict.  *See* ***United States v. Birdine***, 515 F.3d 842, 844 (8th Cir. 2008).

On August 10, 2000, in Caruthersville, Missouri, Coy Smith testified against Tyrese Hyles ("Tyrese"), Hyles's husband (then boyfriend).  After the preliminary hearing in the state drug case, Tyrese devised a plan to have Smith murdered.  He asked David Carter, his cellmate at the County Jail, to kill Smith.  Tyrese promised to have Hyles bail Carter out of jail and to give Carter a 1984 Pontiac in exchange for the murder.  Carter agreed.  That same day, Hyles bailed Carter out of jail, listing the car as collateral and informing the bondsman that she had just sold Carter the car.

That afternoon, Hyles asked Samuel Anderson to borrow a gun.  Anderson agreed to give Hyles the gun and said he would bring it to her house.  According to Anderson, Hyles said "that's fucked up that Coy had testified against Tyrese" and "that she's going to get somebody to take care of his ass."  Five to ten minutes later, Anderson brought a Beretta stainless steel gun to Hyles's residence.  He handed her the gun and told her to place it in the cabinet.  Carter, who was hiding in Hyles's house when the gun was delivered, retrieved it from the cabinet and left.

Carter never killed Smith.  Instead, he returned the gun to Anderson a couple of days later.  He was rearrested on August 18 and taken to the County Jail.  There,

he saw Tyrese again. Carter testified that Tyrese said "that it was fucked up, he would have did it for me."

About the same time, Tyrese and Hyles were also arranging to have Amesheo Cannon kill Smith. Cannon lived with his mother in Memphis, Tennessee, where he was under parole supervision. Phone records, from the evening of August 10, showed several phone calls made from Tyrese's cell at the County Jail to Hyles's residence – including calls made at 7:50 and 8:34. There were also four calls from Cannon's mother's house in Memphis, to Hyles's house in Caruthersville – at 8:11, 8:23, 8:39, and 8:43. The last call lasted 51 minutes and overlapped with the second call from Tyrese's jail cell.

April Leatherwood, Cannon's girlfriend, testified that, on August 14, Cannon called her from Memphis, saying that Hyles was driving him to Caruthersville from Memphis. Hendrietta Nichols, also Cannon's girlfriend, testified that she and Hyles drove to Memphis to pick up Cannon and that Cannon drove them all back to Caruthersville. A couple of days later, Anderson gave Cannon the same gun he had originally given Hyles. He testified that he saw Cannon get out of the passenger side of Hyles's Pontiac, but could not see the driver. According to Anderson, Cannon stated that he was going to "take care of that for Tyrese."

On August 20, Hyles and Cannon drove by Smith's house. Hyles was driving the Pontiac, with Cannon in the passenger seat. Afterwards, Hyles and Cannon went to the County Jail to talk to Tyrese. They were seen yelling up to Tyrese's cell window from outside the jail. The next morning, on August 21, the police found Smith shot to death in bed.

Several days later, Cannon told Anderson how he killed Smith, explaining how he shot Smith one time behind the head and then fired another shot. On August 29 and September 3, Cannon was issued traffic summonses while driving the Pontiac.

A sheriff's deputy also recovered photographs from Cannon's jail cell depicting the Pontiac, and Tyrese and Cannon posing together.

## II.

Hyles claims that her convictions must be vacated because the Government violated a non-prosecution agreement.

This court reviews de novo the interpretation and enforcement of a non-prosecution agreement. *United States v. Glauning*, 211 F.3d 1085, 1087 (8th Cir. 2000). Within the context of constitutional safeguards for due process, non-prosecution agreements may be enforced under principles of contract law. *United States v. Crawford*, 20 F.3d 933, 935 (8th Cir. 1994). "Only a material breach is sufficient to excuse the government of its performance." *Id.*

As relevant here, the proffer letter stated:

> It is my understanding that Tonya Johnson Hyles wishes to explore the possibility of cooperating with the U.S. Government. . . .
>
> Before the Government comes to an agreement with Tonya . . . , she must submit to an interview . . . for the purpose of assessing the credibility and value of the assistance, evidence and possible testimony that she can provide. Only if the Government determines that your client's information and ability to develop information is honest, reliable and worthwhile, will the Government enter into any agreement. . . .
>
> With respect to and in exchange for your client's proffer, the only promises made on behalf of the Government in consideration for the proffer are as follows:

> **(1) Unless otherwise provided herein, any statement made by your client will not be used directly against her in the present or any subsequent prosecution** . . . .
>
> At this time the Government is not entering into any plea agreement or negotiations or representing that it will enter into any plea agreement or negotiations. Any plea agreement or negotiations the Government may enter into will be determined after the interview and shall be left to the sole discretion of the United States Government.

Hyles signed the letter, indicating she understood "there are no promises by the Government to enter into any agreement."

The first indictment against Hyles was dismissed subsequently. At an evidentiary hearing on this issue, the FBI agent testified:

> We knew she had been lying. I think at that point, myself and Mr. Price felt like she still was not giving us everything she knew. The indictment was not dismissed because we thought she was telling the truth and telling us everything that she knew about it. That's certainly not the reason for the dismissal of the indictment.

The FBI agent also asserted that the indictment was dismissed because "the trial date on Ms. Hyles was approaching, was quite near, and we had the issue of pursuing charges against Mr. Cannon and Mr. Hyles, and those were the primary focus." The agent further replied yes to whether Hyles had "stopped being a useful witness on February 8th of 2005."

The district court[1] found that there was no agreement: "The record is clear, however, based on the proffer letter, defendant's actions *vis a vis* the proffer, the determination by the United States Attorney's office that defendant had not given complete, truthful and candid information, and the testimony presented to the Court that an agreement defendant seeks to enforce was never formed." The court did not err in this conclusion.

The proffer letter was not a non-prosecution agreement. The letter contained an agreement to "engage in negotiations involving specific concessions" by the Government in exchange for further cooperation *if* the Government believed the information in the proffer was "truthful, candid and meritorious." The letter also provided use immunity (with some limitations). However, these provisions do not amount to a non-prosecution agreement. Moreover, the fact that the Government dismissed the first indictment does not establish a non-prosecution agreement. The first indictment was not dismissed due to Hyles's past cooperation or the expectation of future cooperation. The Government had concerns about her truthfulness and decided, instead, to focus on the Tyrese and Cannon prosecutions. Therefore, the Government did not breach a non-prosecution agreement.

Hyles contends the district court erred in not making an independent determination whether she materially breached the agreement. Because there is not a non-prosecution agreement in this case, the court did not err.

Hyles further argues the Government violated her Fifth Amendment rights by using her statements, made under the agreement, against her at trial. At trial, the Government introduced excerpts from Hyles's Grand Jury testimony. The proffer

---

[1]The Honorable Henry Edward Autrey, United States District Judge for the Eastern District of Missouri, adopting the report and recommendations of the Honorable Lewis M. Blanton, United States Magistrate Judge for the Eastern District of Missouri.

letter, though, expressly stated: "Further, if your client knowingly provides untruthful information or if she knowingly withholds the full truth from Government agents . . . during the course of the proffer, the promise not to directly use what she says against her shall be null and void. . . ."  Because Hyles signed the letter, indicating she understood it, and the Government believed she was knowingly withholding the full truth, the use of her Grand Jury testimony against her at trial did not violate her Fifth Amendment rights.  *See* **United States v. McFarlane**, 309 F.3d 510, 514 (8th Cir. 2002) ("While [t]he protection given a defendant by an immunity agreement is coextensive with the protection against self-incrimination afforded by the Fifth Amendment, the immunity agreement itself governs the scope of the immunity involved.") (internal quotation marks and citations omitted).

### III.

Hyles insists that there is insufficient evidence to convict her for: 1) conspiracy to use interstate facilities to commit a murder for hire or aiding or abetting; 2) conspiracy to deliver a firearm to a felon; and 3) possession of a firearm in furtherance of a crime of violence.

"We review de novo the sufficiency of the evidence, viewing the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences." **United States v. Birdine**, 515 F.3d 842, 844 (8th Cir. 2008). "We reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." ***Id.***  "The standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly." **United States v. Tensley**, 334 F.3d 790, 794 (8th Cir. 2003).  "If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." ***Id.***

A.

Hyles declares there was insufficient evidence to convict her for conspiracy to use interstate facilities to commit murder for hire. *See* **18 U.S.C. § 1958(a)** ("Whoever . . . uses or causes another . . . to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be . . . imprisoned.").

To convict for conspiracy to commit murder for hire, the government had to prove that there was an agreement to kill Smith, that Hyles knew of this agreement, and that Hyles intentionally joined this agreement. *See **United States v. Cannon***, 475 F.3d 1013, 1020 (8th Cir. 2007). The Government must offer enough evidence to prove Hyles's connection to the conspiracy beyond a reasonable doubt. *See **id.**, citing **United States v. Lopez***, 443 F.3d 1026, 1028 (8th Cir.) (en banc), *cert. denied*, 127 S. Ct. 214 (2006). The conspiracy may be shown by direct or circumstantial evidence. ***Cannon***, 475 F.3d at 1020.

First, Hyles argues there is no evidence that she used interstate facilities or commerce with the intent to further or promote the murder for hire. More specifically, she asserts the evidence did not show that the use of the interstate facilities actually *furthered* the conspiracy. This argument is unavailing.

The Government presented evidence of several phone calls from Cannon's mother's home in Memphis to Hyles's home in Caruthersville. One call overlapped with a call from Tyrese's jail cell. Additionally, Cannon's two girlfriends testified that Hyles went to Memphis to pick up Cannon and bring him back to Caruthersville. The Government also demonstrated that Hyles drove Cannon by Smith's house and took Cannon to visit Tyrese at jail the evening before the murder. According to the

evidence, Hyles (or someone driving her car) took Cannon to get the gun. This evidence, though circumstantial, is sufficient to show the use of interstate facilities with the intent to further the conspiracy.

Second, Hyles contends there is no evidence of a promise to pay anything of pecuniary value to Cannon. Nevertheless, Hyles concedes that Carter was promised a vehicle and getting bonded out of jail. The promise to Carter is sufficient to show "a promise or agreement to pay, anything of pecuniary value." *See* **18 U.S.C. § 1958(a)**. Because this is a conspiracy, the Government was not required to show that Cannon – the person who committed the offense – was promised something of value. It met its burden by showing that Carter, another member of the conspiracy, was promised something of value. Moreover, the Government did show circumstantially that Cannon received the Pontiac for the murder of Smith. Cannon was stopped and issued two traffic summonses after the murder while driving the Pontiac, and a sheriff's deputy found pictures in Cannon's jail cell of the car and of Cannon and Tyrese posing together. Viewing the evidence most favorably to the jury verdict, it is reasonable to infer that Cannon was given the car in exchange for killing Smith.

Third, Hyles maintains the Government failed to prove she knowingly joined a conspiracy with Cannon to murder Smith. To convict Hyles of conspiracy, the Government had to prove, as one element of the offense, that an agreement existed among two or more people to accomplish an illegal purpose. *See* ***United States v. Guel-Contreras***, 468 F.3d 517, 521 (8th Cir. 2006). The Government did show, and Hyles does not argue otherwise, that she had an agreement with Carter, Anderson, and Tyrese, to kill Smith, and that she knew of the agreement and intentionally joined the agreement. Contrary to Hyles's assertions, the Government also showed she knowingly joined a conspiracy with Cannon to murder Smith. The Government presented evidence that several phone calls were placed from Cannon's residence to Hyles's around the same time Hyles and Tyrese were conspiring with Carter to kill Smith, that Hyles drove to Memphis to pick up Cannon and bring him to

Caruthersville a few days before the murder, and that Hyles drove Cannon by Smith's house the evening before the murder. Viewing the evidence most favorably to the jury verdict, this is sufficient to show that Hyles knowingly joined a conspiracy with Cannon to kill Smith. *See* **United States v. Pizano**, 421 F.3d 707, 719 (8th Cir. 2005) ("Proof of a formal, explicit agreement is not necessary; rather, '[t]he government need only show that those involved operated pursuant to a common scheme or had a tacit understanding.'"), *quoting* **United States v. Mickelson**, 378 F.3d 810, 821 (8th Cir. 2004).

Lastly, Hyles objects that her conviction must be vacated because no witness at trial ever identified her as the person about whom they were testifying. "'Courtroom identification is not necessary when the evidence is sufficient to permit the inference that the defendant on trial is the person who [committed the acts charged].'" **United States v. Capozzi**, 883 F.2d 608, 617 (8th Cir. 1989), *quoting* **United States v. Hoelscher**, 764 F.2d 491, 496 (8th Cir. 1985). Viewing the evidence most favorably to the jury verdict, the evidence was sufficient to show that Hyles committed the acts charged.  Hyles was identified by her attorney in opening statement, her identity was not contested at trial, and several witnesses testified they knew Hyles from living in Caruthersville. *See* **Butler v. United States**, 317 F.2d 249, 254 (8th Cir. 1963).

B.

Hyles claims there was insufficient evidence to convict her for conspiracy to deliver a firearm to a felon. Specifically, she alleges the Government failed to prove she knew that Carter was a convicted felon and that he was prohibited from obtaining a firearm. *See* **18 U.S.C. § 922(g)(1)**, **§ 371**.

Viewing the evidence most favorably to the jury verdict, the evidence was sufficient to show that Hyles knew Carter was a convicted felon.  Carter testified he

lived in Caruthersville his whole life, had known Hyles his whole life, and their mothers were friends. He stated his past felony convictions, at the time of the murder-for-hire conspiracy, were burglary, unlawful use of a weapon, shooting into a dwelling, and drug possession. Also, the bond papers, which Hyles signed, indicated that Carter was charged with felony stealing.

The Government was not required to prove that Hyles knew Carter was prohibited from obtaining a firearm; it had to prove only that Hyles knowingly provided Carter with a firearm. *See* **United States v. Kind**, 194 F.3d 900, 907 (8th Cir. 1999) ("it is well settled in this circuit that the government need only prove defendant's status as a convicted felon and knowing possession of the firearm"); **United States v. Lomax**, 87 F.3d 959, 962 (8th Cir. 1996) ("[T]he 'knowingly' element of section 922(g) applies only to the defendant's underlying conduct, not to [her] knowledge of the illegality of [her] actions."). The Government showed that Hyles knowingly provided Carter with a firearm to kill Smith, which was sufficient to convict Hyles for conspiracy to deliver a firearm to a felon.

C.

Hyles asserts the Government failed to prove that she possessed a firearm in *furtherance* of the murder-for-hire conspiracy. *See* **18 U.S.C. § 924(c)(1)(A)**.

"To secure a conviction under § 924(c)(1)(A), the government must present evidence from which a reasonable juror could find a 'nexus' between the defendant's possession of the charged firearm and the . . . crime [of violence], such that this possession had the effect of 'furthering, advancing or helping forward' the . . . crime [of violence]." *See* **United States v. Sanchez-Garcia**, 461 F.3d 939, 946 (8th Cir. 2006), *quoting* **United States v. Hamilton**, 332 F.3d 1144, 1149-50 (8th Cir. 2003).

Possession of a firearm may be either actual or constructive. ***United States v. Johnson***, 474 F.3d 1044, 1048 (8th Cir. 2007). "Constructive possession of the firearm is established where the suspect 'has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself.'" ***United States v. Smart***, 501 F.3d 862, 865 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 1258 (2008), *quoting* ***United States v. Sianis***, 275 F.3d 731, 733 (8th Cir. 2002). "Possession may be joint; it need not be exclusive." ***Smart***, 501 F.3d at 865.

Viewing the evidence most favorably to the jury verdict, there was sufficient evidence that Hyles possessed the firearm. Anderson testified he brought the firearm to Hyles's house and handed it to her. He told her to place it in the cabinet, which she did. After Anderson left, Hyles told Carter the firearm was in the cabinet. Carter retrieved it and left. This evidence supported actual possession by Hyles.

Contrary to Hyles's assertions, there was sufficient evidence that Hyles possessed the firearm in furtherance of the murder-for-hire conspiracy. When Hyles asked Anderson to borrow a firearm, she stated, "that's fucked up that Coy had testified against Tyrese" and "that she's going to get somebody to take care of his ass." Additionally, she knowingly gave the firearm to Carter, who was hired (bailed out of jail and given a car) to murder Smith. This is sufficient evidence for a conviction under section 924(c). *See* ***Sanchez-Garcia***, 461 F.3d at 946 (possession must have the effect of furthering, advancing or helping forward the crime of violence).

### IV.

According to Hyles, a variance exists between the indictment, which alleges one overall conspiracy, and the evidence at trial, which demonstrates two separate conspiracies.

Because this issue was not raised with the district court, this court reviews for plain error. *See* ***United States v. Olano***, 507 U.S. 725, 731-32 (1993). "[B]efore an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." ***United States v. Pirani***, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). The burden is on the defendant to prove plain error. ***Id.***

"A variance arises when the evidence presented proves facts that are 'materially different' from those [alleged] in the indictment." ***United States v. Whirlwind Soldier***, 499 F.3d 862, 870 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 1286 (2008), *quoting* ***United States v. Harris***, 344 F.3d 803, 805 (8th Cir. 2003). The defendant's substantial rights are infringed when: "(1) the defendant could not reasonably have anticipated from the indictment the evidence to be presented against him; (2) the indictment is so vague that there is a possibility of subsequent prosecution for the same offense; or (3) the defendant was prejudiced by a 'spillover' of evidence from one conspiracy to another." ***United States v. Barth***, 424 F.3d 752, 759 (8th Cir. 2005), *quoting* ***United States v. Jones***, 880 F.2d 55, 66 (8th Cir. 1989).

Hyles appears to argue she was prejudiced by the spillover of evidence from one conspiracy to another, insisting the first conspiracy included Tyrese, Carter, Anderson, and herself, while the second conspiracy only included Tyrese, Cannon, and herself. Hyles concludes there was no evidence to demonstrate her knowing involvement in the second conspiracy, or that her actions were in furtherance of that conspiracy. She claims that because the second conspiracy resulted in Smith's death, being not guilty of that conspiracy would significantly lower her sentence. *See* **18 U.S.C. § 1958(a)** (requiring imprisonment of not more than 10 years if personal injury or death does not result). Assuming without deciding that the facts here show two conspiracies rather than one, the evidence clearly shows that Hyles participated in

-13-

both conspiracies. *See* **United States v. Pizano**, 421 F.3d 707, 720 (8th Cir. 2005) ("In a case where the evidence shows that the defendant was a member of each proven conspiracy, the danger of prejudicial spillover 'is minimal, if not non-existent.'"), *quoting* **United States v. Scott**, 511 F.2d 15, 20 (8th Cir. 1975). Therefore, even if a variance existed, Hyles's substantial rights were not infringed.

V.

Hyles alleges she was denied the right to a fair trial because the Government engaged in improper closing argument. Specifically, she claims the Government improperly injected the contents of phone and in-person conversations between Hyles, Tyrese, and Cannon, none of which were in evidence.

Hyles also asserts the Government improperly vouched for its own witnesses. The Government during rebuttal stated:

> You know, he talks about Anderson and Carter and about how their stories aren't entirely consistent, but then on the other hand, he's talking about how we put this whole story together. Well, we must not have done a very good job if we can't get their stories consistent, right? Well, the reason their stories are inconsistent in some ways is because they are telling the truth . . . ."

The Government reiterated that Carter "told you the truth."

The district court has broad discretion in controlling closing arguments. **United States v. Degarmo**, 450 F.3d 360, 365 (8th Cir.), *cert. denied*, 127 S. Ct. 516 (2006). "To obtain a reversal for prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial." *Id.* Because Hyles did not object, this court will review for plain error. *See* **United States v. Olano**, 507 U.S. 725, 731-32

(1993); *United States v. Frokjer*, 415 F.3d 865, 873 (8th Cir. 2005). "[I]f an arguably improper statement made during closing argument is not objected to by defense counsel, we will only reverse under exceptional circumstances." *United States v. Mullins*, 446 F.3d 750, 758 (8th Cir.), *cert. denied*, 127 S. Ct. 284 (2006).

Here, there is no plain error. The phone conversation between Hyles, Tyrese, and Cannon, took place the evening of Smith's preliminary testimony. Hyles had already bailed Carter out of jail, borrowed a gun from Anderson "to get somebody to take care of [Coy's] ass," and given the gun to Carter. The in-person conversation between these three occurred the night before Smith's murder. Immediately before this conversation, Hyles drove Cannon by Smith's house. Additionally, Cannon had already received the gun back from Anderson. Based on these facts and other facts presented at trial, it is reasonable to infer that Hyles was "updating Cannon on where we are here" and telling Tyrese, "Look who I have here, Cannon is in town." *See Frokjer*, 415 F.3d at 874 ("Prosecutors are entitled to argue reasonable inferences to be drawn from the facts in evidence during closing arguments.").

Moreover, it was not improper during rebuttal for the Government to say its witnesses were telling the truth. Hyles's counsel during closing argued Carter's testimony was motivated by his desire to get released from jail early and that the inconsistencies in his testimony was "because he is lying to us." Hyles's counsel also argued that Anderson had similar motivations, implying he also lied. On plain error review, the Government's response to these attacks was not improper. *See United States v. Ziesman*, 409 F.3d 941, 954 (8th Cir. 2005) ("In closing arguments, a prosecutor is entitled to make a fair response and rebuttal when the defense attacks the government's case.").

VI.

Hyles maintains that because the jury was not asked to come to a unanimous verdict, or make a determination, as to the factual findings supporting her 18 U.S.C. § 1958(a) conviction, her life sentence violated her Sixth Amendment right to a jury trial and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In particular, Hyles insists the jury did not make a specific finding that death resulted from the murder-for-hire conspiracy.

This court reviews de novo constitutional challenges to a sentence. **United States v. Bradford**, 499 F.3d 910, 919 (8th Cir. 2007), *cert. denied*, 76 U.S.L.W. 3454 (U.S. Feb. 25, 2008) (No. 07-7829). In *Apprendi*, the Court ruled: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490; *see also* **Blakely v. Washington**, 542 U.S. 296, 301 (2004) *and* **United States v. Booker**, 543 U.S. 220, 244 (2005). Section 1958(a) provides that a life sentence may be imposed if death results from violation of the statute. **18 U.S.C. § 1958(a)**.

Here, the jury verdict did not violate Hyles's Sixth Amendment right to a jury trial.  Jury Instructions 30 and 32 specified one element was that the death of Smith resulted from the conspiracy to commit murder for hire (Count I), and the aiding and abetting murder for hire (Count II). Jury Instruction 32, on Count II, expressly stated that the Government had to prove all the elements of the offense beyond a reasonable doubt.  Jury Instruction 28 also specifically stated this with regard to Count I. Therefore, for the jury to convict on Counts I and II, the jury necessarily had to find that the death of Smith resulted.  Because the jury returned guilty verdicts on both counts, the district court properly imposed a life sentence.  *See **id.***

VII.

Hyles claims the district court erroneously allowed the Government to introduce two hearsay statements: (1) Leatherwood testified that Cannon called her on August 14 and told her that Hyles was picking him up in Memphis to bring him to Caruthersville; and (2) Carter testified that Tyrese told him that "he would have did it for me."

Hyles did not object to these statements at trial; this court reviews for plain error. *See* **United States v. Olano**, 507 U.S. 725, 731-32 (1993); **United States v. Eagle**, 515 F.3d 794, 802 (8th Cir. 2008).

An out-of-court statement is not hearsay if it is offered against the defendant and is a statement of the defendant's co-conspirators made in furtherance of the conspiracy. **Fed. R. Evid. 801(d)(2)(E)**; **United States v. McKay**, 431 F.3d 1085, 1093 (8th Cir. 2005). Though this court interprets "'in furtherance of the conspiracy' broadly, 'a statement that simply informs [the] listener of the declarant's criminal activities is not made in furtherance of the conspiracy.'" ***Id.***, *quoting* **United States v. Manfre**, 368 F.3d 832, 838-39 (8th Cir. 2004). In order to admit the co-conspirator statements, the government must establish by a preponderance of the evidence that "(1) a conspiracy existed, (2) both the declarant and [Hyles] were members of it, and (3) the declarant made the statement in the course and in furtherance of the conspiracy." *See* **United States v. Mahasin**, 362 F.3d 1071, 1084 (8th Cir. 2004).

Here, there is no plain error in admitting the two statements. The government established that a conspiracy existed, that Cannon, Carter, and Tyrese were co-conspirators with Hyles in it, and that Cannon's statement to Leatherwood was made in the course and in furtherance of the conspiracy. *See* **United States v. Jordan**, 260 F.3d 930, 933 (8th Cir. 2001), *citing* **United States v. Johnson**, 925 F.2d 1115, 1117 (8th Cir. 1991) (statements identifying participants and discussing various roles

admissible). Cannon's statement is admissible also as a hearsay exception to show his then existing state of mind. *See* **Fed. R. Evid. 803(3)** ("statement of declarant's then existing state of mind . . . (such as intent, plan, motive, design)"). This statement is not excluded by the hearsay rule. *Id.* Moreover, Hyles cannot demonstrate prejudice because her own witness testified she brought Cannon from Memphis. Hyles also cannot show any prejudice in admitting Carter's testimony. Hyles is not directly implicated in the testimony, and she does not contest that there was a conspiracy between Tyrese, Carter and herself, to kill Smith.

Hyles also contends that the statements violated her rights under the Confrontation Clause of the Sixth Amendment and *Crawford v. Washington*, 541 U.S. 36 (2004). "The Confrontation Clause bars the admission at trial of the testimonial statements of a witness who is absent from trial, unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine him." *Eagle*, 515 F.3d at 802, *citing Crawford*, 541 U.S. at 53-54. Here, the statements are non-testimonial. *See id.* at 51 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."). Neither Tyrese nor Cannon were making formal statements, nor were their "statements elicited in response to government interrogation." *United States v. Johnson*, 495 F.3d 951, 976 (8th Cir. 2007), *petition for cert. filed* (U.S. Feb. 19, 2008) (No. 07-9456). In other words, they did not bear testimony. *See id.* Therefore, *Crawford* is inapplicable.

### VIII.

The judgment of the district court is affirmed.

_____